2017, 1235, and 1288. Mr. Bonilla, the second case is Valmont Industries v. Lindsay Corporation. So, Mr. Bonilla? Yes, Your Honor. You're the first person to get it right today. Thank you. Good morning, Your Honors. May it please the Court. This Court should reverse the Board's decision with respect to claims 1 through 10, 12 through 15, 17, and 18 of the 357 patent for two reasons. First, the Board improperly considered supplemental information submitted after the petition in coming to its decision with respect to these claims. And second, specifically with respect to claims 4, 5, and 17, the Board's decision did not have sufficient information in the record to substantiate it. So, as to the first point, the Board improperly considered supplemental information that was provided by Lindsay outside of its petition. How is your argument consistent with Belden? So, Belden helps us and also kind of frames the issue for us. So, one thing from Belden was that we knew that if there is supplemental information that's provided, one of the proper vehicles for addressing that would be a motion to exclude, which is what Valmont filed in this case, but then was told at the final hearing that that was improper. Now, in Belden, there was the opportunity— —to the patent holder's arguments and produce new evidence to respond to that, which seems to be inconsistent with what your argument is. And that would be the case, Your Honor, if we were talking about Valmont saying that the petition was incorrect in some instances or that it had failed to make certain points with respect to the information that was in the actual petition. What Valmont said here was, well, let's take this sheet of paper, and in this sheet of paper is your petition. It'd be one thing if Valmont had poked holes in it. Then Lindsay, of course, can come back and respond and say, no, this is what was in the petition. What was in the petition was sufficient for a prima facie case. We've established the unpatentability of the claims. That's not what happened here. What happened here was Lindsay presented a paper, a petition, that already had holes in it. And Valmont simply said, you're missing something here. You're missing a motivation to combine. You're missing the reasonable expectation of success that a person of ordinary skill in the art would have on combining these references. Then Lindsay comes back in its response and does not say, oh, no, it's not missing that. It's in the petition. Here is where it is. Instead, they say, here is some more information that fits what you say is missing. So, for example, with respect to Scott and Piotr, so those two references, the motivation to combine the two of them. All that Lindsay said in his petition is it would have been obvious to combine these. A person of ordinary skill in the art would have been motivated to combine these to get enhanced portability and mobility. They rely on Dr. Rosenberg's declaration for that statement. The only thing it says in Dr. Rosenberg's declaration, his initial declaration, is it would have been easy for a person of ordinary skill in the art to combine the complex system of Scott with the mobile terminal of Piotr to arrive at the claim one, for example, the 357 patent. There's nothing to support that statement in his initial declaration. And we can see that from the fact that after Valmont filed its patent owner response and said, you don't have enough information in here. You have not established a motivation to combine. Lindsay then served a supplemental declaration, which wasn't initially filed, but served a supplemental declaration that was almost an admission that there were some things missing from that original petition. What they could have done is said, no, here is how the petition establishes the motivation to combine. Here is how the petition establishes the information that we needed for a prima facie case. They didn't do that. Instead, they added supplemental information. They added Dr. Rosenberg's supplemental declaration and then his declaration with their reply, where he provides more evidence as to why a person of ordinary skill in the art would be motivated to combine these references. And it's important to remember that what the references are that we're talking about. In Scott, you have a complex system for irrigation of golf courses. And this system is using CAD software that requires certain processing capabilities, certain display capabilities to show that information. Piozzia has a mobile terminal that, I mean, it goes just almost as far as to say it's a dumb terminal. All we've got is showing a display with certain pieces of information. But it requires a control system to be somewhere else, an intermediary that the mobile terminal can send signals to, excuse me, send commands to. And then the control system processes those commands and applies them to the irrigation system that we're talking about. And in fact, the mobile terminal would require, it couldn't even handle standard HTML. It would need to use the WAP protocol to reformulate standard HTML for that terminal to even be useful. So now with those two references, Lindsay has to show in its petition a motivation to combine those two to practice the claimed invention of these particular claims. And Valmont's response to what Lindsay did was, you haven't done that. You haven't shown us these specific grounds for why a person of ordinary skill in the art would be motivated to combine these references. And then tried under Belden, served objections, filed a motion to exclude, deposed Dr. Rosenberg and filed a motion for observations. Isn't the motivation there to improve the functioning of the device? If you've got something that works and then the possibility of a remote comes along, why isn't there sufficient motivation to put them together? That's not sufficient motivation to put them together, Your Honor, because we have to think about what is actually being taught by these two references. We don't just have any mobile device in Piozzia. We don't just have any smartphone like what somebody may have in their pocket today. It's the mobile terminal that's in Piozzia that requires this intermediary, this control system that's off away from the mobile terminal, that would then allow this basically dumb terminal to send data to the control system to then control the irrigation equipment. That device would not, a person of ordinary skill in the art at the time of the invention, would not have been motivated to combine that device with this CAD software from Scott that has all of these particular GUIs, that has all of this information, this processing power. A person of ordinary skill in the art wouldn't be motivated to combine those two. And it's Lindsay's burden, we know this from Magnum Moro, that it's Lindsay's burden to establish that motivation to combine in its petition. And it didn't do so. So when Valmont says, hey, you have failed to show in your petition a prima facie case of obviousness, the correct response from Lindsay would have been, no, we have, and here's why, instead of what they did, which was to provide this supplemental information without seeking leave from the court. Now, with respect to the second issue, specifically claims 4, 5, and 17, there isn't sufficient evidence in the record for the board to have made the decision that it made, because with respect to claims 4 and 5, the petition does not include any information about a motivation to combine Scott, Piotr, and X. And then with claim 17, the only statement that's in the petition is Lindsay saying, well, claim 17 is a method analog of claim 1. Now, that's not true. We saw that Lindsay and Dr. Rosenberg both conceded that claim 17 is different from claim 1, at least because claim 17 requires directly controlling from whatever the handheld device is, the irrigation system. So there can't be any kind of intermediary. So there isn't any explanation in the petition as to why a person of ordinary skill in the art at this time the mobile terminal from Piotr, which teaches the need for a control system for an intermediary, to directly control the kind of system that's in Scott. So using that kind of dumb terminal, taking that information and transmitting that information to the system and applying it in that way. The only statement that we have in the petition is that 17 is a method analog of claim 1. We've already established claim 1, and therefore claim 17 is invalid for the same reasons as claim 1. That's not sufficient. There should have been, but wasn't, a specific articulation of the grounds for why 17 was invalid or would have been obvious in light of these two references, and for a motivation to combine these two references to practice specifically claim 17. The same goes for claims 4 and claim 5. There needs to have been specific articulation of the grounds for these two claims, and there wasn't. Lindsay obviously was constrained by the page limitations or word limitations in his petition and tried to use some incorporation by reference, but it never actually incorporates by reference any discussion about these three claims in particular. And so for these reasons, Your Honor, we ask this Court to reverse the Board's decision with respect to claims 1 through 10, 12 through 15, and claims 17 and 18. How about claim 11 where they held it was not unpatentable? Isn't it correct that a change in shape would be manifested by a change in the shading of a pattern? And doesn't the specification talk about a change in shading suggesting that that's a change in shape? Well, the specification doesn't talk about the shading changing, the shape specifically. It says there are lots of places in there that it talks about a change in shading. It said different colors or patterns can be used to shade each wedge. It says the user can customize the screens to show the actual portion of the field that's under its control. I mean, there's a lot of references in the specification to changing shape by changing shading. And those references, Your Honor, go to not specifically the inventionist claims in claim 11 because claim 11 we're talking about shape showing the type of equipment, the pattern, and the status of the equipment. And there's two different ways that that could happen. What about the statement in the prosecution history page, appendix 178? Similarly, with regard to claim 11, the applicant specifically claimed that the software changes the shape of the GUIs in response to a change in the status of the irrigation system. 178, appendix. So the changing of the shape of the GUI in response to a change of the status is the shape of the actual GUI, the border or the outline of the GUI itself. And we know that because there's two different kinds of GUIs that are referenced in the patent. If you look at under columns three and four, you can see that there's textual GUI. So changing the words would be changing the outer borders of the shape. Or there's pictorial GUIs. So it could be a circle with a line through it, or it could be a circle that has a wedge cut out of it or a triangle or something like that. So it's two different kinds. It's different kinds of shapes that would show the status, the pattern, and the type of equipment. But in all those instances, it has to be a GUI that does all three of those things for claim 11. And the board stated that Lindsay had not shown sufficient evidence to establish the unpatentability of that claim. Your Honor, I'll reserve the rest of my time. Do that, Mr. Brown. May it please the court, this is a mill run case where petitioner brought forth substantial evidence and argument in its petition. Patent owner replied with evidence from an expert. And petitioner submitted reply evidence rebutting the evidence submitted in patent owner's response. And the board found that all of that was proper under this court's precedent. This just followed the ordinary pattern of trial and the rules that are provided for by the patent office. So there's nothing unusual in anything that occurred here. Turning to the first combination, the board found that Scott and Piozzia together invalidated all but four of the claims. The board, if you read carefully the final written decision, based its opinions on the Prima Fascia case entirely out of the evidence and argument that was submitted with the petition. Specifically, the board found that it was undeniable that Scott had all of the limitations of those claims except for a handheld device. Scott had a laptop that had GUI control, GUI interaction and control of irrigation equipment. And that the only thing that was missing was the handheld and that Piozzia supplied the handheld device. And the board found it was proper to combine Piozzia, which is from the same field of endeavor, remotely controlling equipment in the field, with Scott. The board found in its final written decision that the motivation to combine could be found in the petition. It's specifically cited to page 31 in the petition for the motivation to combine. It's specifically cited to the original Rosenberg declaration at paragraphs 56 to 61 to find that they were same field of endeavor. That the motivation to combine was that one of ordinary skill would have desired the increased portability and mobility found in Piozzia's handheld device with the other functionality found in Scott's laptop. But it would be more portable and that would be the reason to make the improvement. All of that was supported by substantial evidence. The board found based on the original petition that there was a reasonable expectation to combine. Based upon the Rosenberg declaration and specifically citing the paragraphs 57 to 61 in the Rosenberg declaration. It also found not only did it credit Rosenberg's testimony that it would be easy for one of ordinary skill to utilize the monitor and control functions of Scott on the handheld device of Piozzia. But the board also referred to the specific teachings of Piozzia itself and also to the Ames reference and found that all of those teachings carried the prima facie case of obviousness. All of that is substantial evidence. The board followed this court's precedence and did not engage in improper hindsight. The board did rely on the Rosenberg reply declaration but only to address the arguments raised by their expert Dr. Mercer from patent owner's response. Specifically, Mercer had argued below that you wouldn't be able to port the CAD software found in Scott's laptop onto Piozzia's mobile phone. The board accepted the Rosenberg reply declaration to address that argument. And first noted that the standard was all wrong that was being argued. You do not have to prove that one can bodily modify or put together two references and graft one on top of the other. Each reference is good for what it teaches under in Ray Motet. Rosenberg pointed out in his reply declaration that he had not argued that you would try and port the CAD software from Scott onto Piozzia. He pointed out that he had argued that the monitor and control functions were able to be performed on Piozzia. And that that was the thrust of his original declaration. And Rosenberg provided in his reply declaration showed how Dr. Mercer himself had introduced evidence that showed that the cell phones and PDAs of the day prior to the application date of the patent were fully capable of performing the monitor and control functions. So that evidence came in to rebut the position taken by Patent Owner that it isn't possible to bodily move Scott onto Piozzia. And that's what was being responded to in the reply. It was proper reply evidence. The board heard Patent Owner on the issue of whether the reply was proper. Patent Owner filed a motion to exclude. And the board determined that under its own regulations, specifically section 4223B, that it was entitled to receive reply evidence so long as that evidence was true reply to what Patent Owner had submitted. And the board made a careful determination that that is exactly what was in the Rosenberg declaration. Patent Owner, in their principal brief, did not even address the board's finding that Rosenberg's reply declaration was proper under 4223B. And that should dispose of this issue entirely. Nor did Patent Owner attack the ability of the PTO to issue 4223B as a regulation under the Patent Act. And this court has found in its Belden and Gemstein cases that it is entirely proper for a petitioner to come in with a reply declaration that has new evidence. And has observed that it would not be unusual for the reply evidence to support a prima facie case. But that does not answer the question of whether the reply evidence was necessary to the prima facie case. And the board here found that the reply evidence was not necessary to the prima facie case. Because when you read the decision, the prima facie case is made out entirely out of the petition and the original Rosenberg declaration. Although there's argument by Patent Owner about the supplemental Rosenberg declaration, that was never relied upon by the board. The board only notes in its final written decision that it has renumbered it as 1021. And then never again in the entire final written decision is Exhibit 1021 referred to. So the supplemental Rosenberg declaration is a non-issue in this case. Turning to whether Patent Owner had adequate notice to respond to the grounds asserted against Claims 4, 5, and 17. First, the board heard... Let me interrupt you, counsel. I want to make sure you have time to deal with the cross appeal. Okay. I'll turn to the cross appeal then, Your Honor. Claim 11 depends from Claims 10 and 6 back to Claim 1. Claim 11 requires the following things that the board found and construed. First, it requires GUIs that are shaped to identify particular types of irrigation equipment. It requires GUIs that are shaped to show an operating irrigation pattern. And in the key phrase, it requires a change in response to the shape, to a change in status of the irrigation equipment. So if the status of the irrigation equipment changes, there has to be a change in shape. Based upon what the board found to be the facts below, this court has to... And as claim construction, this court has to reverse the board on the cross appeal based upon a matter of law. First, the board construed and it's not contested that Claim 11 does not require the irrigation patterns to change. It just requires a change in the shape of a GUI to reflect a change in operating irrigation status. It's undisputed that Scott shows the following. And the board found this. Irrigation equipped... Irrigation equipment shaped GUIs, irrigation pattern shaped GUIs, and changing the shape of a GUI to reflect a change in status. So Scott, we say, expressly discloses the limitations found in Claim 11 under the board's construction of Claim 11, based upon the findings by the board itself. Those facts put together, coupled with the board's proper finding that Piozza and Scott were combinable, mean that this claim should have been found to be obvious. Secondly, during the original prosecution, patent owner argued that Claim 11 distinguished over the APPS reference, because APPS did not show changing shape. And in that process, they said, look in the spec of the 357 patent, and pointed to first an NGUN GUI, and then an NGUN GUI with a circle slash put over the top of it, as showing a change in the shape that satisfied Claim 11. So that is not showing a change in an irrigation pattern GUI. That is showing a change in irrigation equipment GUI. And patent owner argued during the original prosecution that supported Claim 11. Well, if that type of disclosure supports Claim 11 in the specification, that same type of disclosure in the Scott reference, which unquestionably shows irrigation equipment shape GUI, and the change in the irrigation equipment shape GUI with a change of status, if it was support in the spec, it has to be disclosure in the prior art. And this court, on that basis alone, should reverse the board's finding that Claim 11 is not obvious. Finally, if the court were to find that Scott and Peozia together don't show Claim 11, then we submit that the addition of APPS would. And APPS shows circle-shaped GUIs, which are meant to represent center pivot irrigation systems. Center pivot irrigation systems, by their nature, have circles for their irrigation pattern. That's just the way they all operate. They're all circles. The APPS reference shows placing an X on a circle to indicate a change in status. All of that is admitted. The board then said that even though it's known to put an X on a circle to show a change in status, it was inventive, apparently. But what APPS shows also is a change in shading to show a change in the irrigation pattern. I thought your opposing counsel at the oral argument before the board admitted that a change in shading was a change in shape. I believe that that's correct, Your Honor, and we pointed that out in our principal brief. Changing shade would change a shape, and APPS shows putting crosshatches. If I can look at the figures real quick. For example, it's on 1088. APPS here shows changing the shading to show that it's on wet. That's correct, Your Honor. In the lower half of that figure, on wet, and then also, for instance, on dry, shows shading only on one side of the semicircle of the whole circle. And so given what Valmont admitted during oral argument before the PTAB, that also shows a change of shape in an irrigation pattern. So we would submit that the board was correct in most of its findings, but erred when it failed to find that Claim 11 was obvious. Unless there are other questions, I'll reserve the rest of my time. That's fine. Mr. Bonilla? Your Honor, first I want to clarify my response to Judge Deke's question from earlier about the shading versus changing the shape. The shading is what's claimed in Claim 12. So Claim 12 talks about a change in color to reflect status, and that's... Well, there's a distinction between color and shading, which the specification makes. Well, Claim 11 is still talking about the shape and changing lining... Aren't shape and shading the same thing? Change in shape, change in shading. Doesn't a change in shading cause a change in shape? Well, no, Your Honor. The board stated that merely changing the lines within the border of a gooey isn't sufficient to change its shape. Well, I know what they said, but I'm looking at the concession that you made in the oral argument and looking at the specification here, which constantly talks about change in shading, suggesting that that's a change in shape, though it doesn't use those words, right? Well, the discussion in the oral argument was that there could be a circle with a line through it, which would not be just changing lines within the border, or a triangle with a checkerboard pattern over it, which would also potentially be outside the border of the triangle. And that's something that Lindsay conceded on page 11 of its reply brief, that merely changing or changing lines within the border of a gooey is not changing the shape of the gooey. This is on 2386. One thing to keep in mind is line 15. So when it says the shape or the status information of the gooey, shape doesn't necessarily have to be that it's a circle or just it's a triangle. It could potentially be that it's a circle that's got lines through it, or a triangle that has a checkerboard pattern across it, which seems to suggest or suggests to me that a change in shading is a change in shape. And it could have been said better, Your Honor, in front of the PTAB. When I said a line through it, I meant actually a line through it as in extending past the border, or a checkerboard pattern across it, I meant across the actual triangle, such that it affects the outer border of the gooey. So just changing the shading within the lines, as the board stated, as Lindsay has conceded, is not sufficient to change the shape of the gooey itself, because it's the borders, the outer border of each gooey that we're most concerned with. And it's for these reasons, Your Honor, we ask this court to reverse the board's decision with respect to all claims except claim 11. Why would you put the shading outside of the irrigation pattern? The circle is the irrigation area, right? So why would you put a shading outside that area when you're trying to define what's happening within the circle, which is the irrigation area? Your Honor, see, I'm out of time to answer the question. So it depends on what the farmer or the individual running the system wants to know from this information. Because the pattern of the irrigation, it could be that you have a circle, for example, that might extend past the normal place where you might put that circle. For example, if you want to change the irrigation pattern because you want the pivot to end up next to a service road that's on one end of the circle that extends beyond that, if there's a particular section of the circle that you want a path that has such a more opportunity to irrigate that particular path, there's a lot of reasons why you might have a pattern that extends beyond the outer border of the shape. Because it doesn't necessarily mean that just because it's a circle, that's the circular pattern. That's what we think of immediately. But it could be any shape that would show the type, the pattern, and the status. And that includes, for example, text GUIs that might just have them written, which is what was referenced in the pattern. Thank you, counsel. Mr. Brown has a couple of minutes for rebuttal on the prosecution. Thank you, Your Honor. I think I really just want to address one issue, which is the board is according no creativity, no ordinary creativity to one of ordinary skill when they reach the conclusions they've reached. Scott unquestionably shows that you can have irrigation-shaped, equipment-shaped GUIs, that you can have irrigation-patterned-shaped GUIs, and that you can change the shape of a GUI to indicate to the user a change in status of the equipment. Now, those three things together to say that one of ordinary skill in the arc, reading Scott alone, wouldn't arrive at the ability to extend an X beyond a circle, instead of keeping an X within a circle, accords no creativity whatsoever to one of ordinary skill. It turns one of ordinary skill into an automaton who can only take exactly what's shown to him and do no more. And here the general teaching that you can change shape of a GUI to reflect a change in status is generally applicable to any one of the GUIs that's disclosed in Scott. And that general applicability would mean that one of ordinary skill would understand if I have an irrigation-pattern-shaped GUI and I want to indicate some sort of change in status to the user, I could do it with that one, too. And the board's unwillingness to accord even that minimal, ordinary creativity to one of ordinary skill, we think is legal error. Thank you, counsel. We'll take the case under advisement.